■ DOUGLAS DIPASQUALE, Appellant, v RONALD GUTFLEISH et al., Respondents. [902 NYS2d 38]—

Order, Supreme Court, New York County (Herman Cahn, J.), entered on or about September 8, 2008, which, to the extent appealed from as limited by the briefs, granted defendants' motion for partial summary judgment dismissing claims for damages (other than management fees) accruing after July 1, 2006, unanimously affirmed, with costs.

Before June 2005, plaintiff and defendant Gutfleish were co-managing members of two limited liability companies, defendants Elm Ridge Capital Management, LLC (ERCM) and Elm Ridge Value Advisors, LLC (ERVA), which were both engaged in advising or managing hedge funds controlled by Gutfleish. In June 2005, plaintiff, Gutfleish, ERCM and ERVA entered into a separation agreement pursuant to which plaintiff resigned as a managing member of ERCM and ERVA, and as head trader of ERCM, in exchange for payments to be made to him by ERVA and ERCM that were to continue until December 31, 2007.

It is undisputed that June 30, 2006 constituted the "Cutoff Date" under the separation agreement, as defined by section 5.04 (f) thereof, the contractual implications of which are discussed hereinafter. Effective the following day (July 1, 2006), Gutfleish caused ERVA to resign as a general partner of two of the hedge funds and, in addition, caused two newly formed entities controlled by him (defendants Elm Ridge Management, LLC and Elm Ridge Partners, LLC) to replace ERVA and ERCM as the recipients of the fees and profit allocations paid by the hedge funds to management. Based on these changes in the management structure of the hedge fund group, Gutfleish

# 545

terminated the payments of management fees and profit allocations plaintiff had been receiving from ERVA and ERCM pursuant to the separation agreement, prompting plaintiff to commence this action.

After joinder of issue and discovery, Supreme Court granted defendants partial summary judgment dismissing all causes of action to the extent they seek damages alleged to have accrued since July 1, 2006, *other than* damages accruing since that date alleged to have arisen from the failure to pay plaintiff the share of the management fees paid by the hedge funds allocated to him by the separation agreement.[1] Stated otherwise, the court dismissed all causes of action to the extent they seek post-July 1, 2006 damages allegedly arising from the failure to pay plaintiff the share of the hedge funds' profits allocated to him by the separation agreement.[2] We affirm.

Supreme Court correctly determined, as a matter of law, that section 5.04 (d) of the separation agreement permitted Gutfleish to replace ERVA as general partner of two of the hedge funds with a new entity to perform the same role without causing the new entity to assume ERVA's obligation to pay plaintiff a percentage of the managers' profit allocation, so long as ERVA was replaced (as it actually was) on or after the cutoff date. Gutfleish's entitlement to replace ERVA after the cutoff date arises by necessary implication from the provision of section 5.04 (d) that, if ERVA were replaced "prior to the Cutoff Date," Gutfleish would be obligated to require the entity replacing ERVA to "agree, in writing, to assume the obligations of ERVA under this Agreement."[3] The specific requirement that Gutfleish cause the entity replacing ERVA to assume ERVA's obligations only in the event the replacement occurs "prior to the Cutoff Date" necessarily implies that Gutfleish has no such obligation if the replacement occurs *after* the cutoff date. A contrary inter-

---

**1.** Defendants conceded before Supreme Court that certain issues of fact preclude granting them summary judgment insofar as plaintiff seeks damages for the failure to pay him a share of the management fees paid by the hedge funds since July 1, 2006. Accordingly, the branch of defendants' summary judgment motion addressed to claims for those damages was withdrawn.

**2.** It appears that plaintiff received all of his profit allocations through ERVA.

**3.** Section 5.04 (d) of the separation agreement provides in full as follows: "In the event that, prior to the Cutoff Date, (i) ERVA is terminated as general partner to either of the Value Fund or the Capital Fund [hedge funds organized as limited partnerships], and (ii) such fund with which ERVA was so terminated appoints as the new general partner a person or entity controlled, directly or indirectly, by Gutfleish, then Gutfleish shall require that such entity agree, in writing, to assume the obligations of ERVA under this Agreement."

pretation would render the cutoff date meaningless surplusage. Since there is no ambiguity in this aspect of the separation agreement, we construe it as a matter of law.

We reject plaintiff's argument that there is an issue of fact as to whether ERVA was "terminated" within the meaning of section 5.04 (d) of the separation agreement. Plaintiff asserts in his affidavit that this provision addresses only the event of ERVA being involuntarily terminated as general partner of the hedge funds, while in fact ERVA (acting through its managing member, Gutfleish) resigned those positions voluntarily. Reading the separation agreement as a whole, we see no basis for construing the word "terminated" in section 5.04 (d) to exclude a termination of ERVA's role as general partner of a hedge fund that was voluntary on ERVA's part. "[C]lear contractual language does not become ambiguous simply because the parties to the litigation argue different interpretations" (*Riverside S. Planning Corp. v CRP/Extell Riverside, L.P.*, 60 AD3d 61, 67 [2008], *affd* 13 NY3d 398 [2009]).

We have considered plaintiff's remaining arguments and find them unavailing. Concur—Tom, J.P., Friedman, Nardelli, Buckley and Richter, JJ. **[Prior Case History: 2008 NY Slip Op 32450(U).]**